# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ODELL P. LAWSON, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) | Civil Action No. 10-0369 (ESH) |
| PEPCO, | ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION

Plaintiff Odell P. Lawson, proceeding *pro se*, has sued his employer, defendant Potomac Electric Power Company ("Pepco"), for employment discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000 ("Title VII"), and breach of contract. Pepco has filed a motion to dismiss for insufficient service of process and failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(5) and 12(b)(6). Upon review of the parties' legal memoranda and the applicable law, the Court will grant defendant's motion to dismiss all claims under Rule 12(b)(6).

## BACKGROUND

Plaintiff has been a Pepco employee since 1974. (Mot. at 3.) Plaintiff served the complaint on Pepco via USPS Express Mail on March 25, 2010; the package was addressed to Pepco and delivered to Pepco's main office. (Mot. at 8, Ex. B at 2-3.) Plaintiff's complaint alleges employment discrimination in violation of Title VII and breach of contract based on the following incidents that allegedly occurred during the course of his employment:

1) Files containing records of jobs plaintiff had completed were deleted by other Pepco employees two to three times a month for a period of six to ten years. The deletions have ceased since plaintiff was provided with a flash drive by Pepco management two to three months before the complaint was filed. (Compl. at 27-30.)

2) Other employees were allowed to be in the office "at almost any given hour," while plaintiff was told to leave if he stayed after 4:45 p.m. (*Id.* at 29.)

3) Between September 17, 2003 and September 26, 2003, plaintiff was isolated by management when he was assigned to work in Rockville during the aftermath of Hurricane Isabelle despite having more experience than the nine employees assigned to work storm duty in Forestville. (*Id.* at 24.) He was further isolated by Pepco management in assigning him to work in Prince George's County while a street light conversion project was ongoing in the District of Columbia and in overlooking plaintiff for overtime storm duty in the aftermath of Hurricane Katrina. (*Id.* at 25-26.)

4) During a speaker phone call on February 15, 2007, Pepco employee Jamie Dudley said of plaintiff to a Pepco supervisor, "You know, you've got to keep an eye on him." (*Id.* at 11.) This statement was made so that several other Pepco employees could hear it and was "very, very deceitful, bordering on hate, for a person you hardly know." (*Id.* at 12.)

5) On October 22, 2007, Travis White, another Pepco employee, "kept inquiring" about when plaintiff would retire and speculated that plaintiff was "not financially able to retire." (*Id.* at 17, 34.) White was uncooperative during the project they were working on together. (*Id.* at 17, 34.) White then engaged in "blatant insubordination" in refusing to follow plaintiff's instructions to take a certain route driving back from the project and to stop so that plaintiff could get some lunch. (*Id.* at 19-21.) During this incident, "in an effort to regain control of the situation" and only after checking carefully for oncoming traffic and turning on the blinkers, plaintiff put the truck into park and removed the key from the ignition of the vehicle while it was stopped at a red light. (*Id.* at 20.) On December 5, 2007, plaintiff received a written reminder from Fred S. Johnson of Pepco about the safety violation relating to the removal of the key from the ignition of the truck. (*Id.* at 21-23.) White was not disciplined for his insubordination because he was the son of a Pepco supervisor. (*Id.* at 21-22.)

6) Other employees were part of a "conspiracy" – "a group of guys that meant [plaintiff] 'no good' " (*id.* at 13, 15), as shown by the following incidents: (a) Cheiho Ko, an Pepco engineer, spoke to him "in a loud, belittling voice," saying, " Lawson, what the hell is this . . .[?]" (*id.* at 13); (b) Gary Neckorcuk, a supervising engineer, "repeatedly, threateningly" told plaintiff, "I didn't like the way you handled that situation with Ko" (*id.*); (c) Neckorcuk said, "I heard you applied for that new position," followed by "Well, who's going to teach you?" (*id.*); (d) Jeffrey B. Linton, another Pepco employee, gave "wrong information on each and every manhole" to plaintiff during a project (*id.* at 14, 31-32); (e) Linton "dragged [plaintiff] through court on a bunch of bogus lies about [plaintiff] 'stalking him' in retaliation for [plaintiff] making it known to management that he purposely gave [plaintiff] incorrect data," resulting in a three-day suspension with pay

for plaintiff (*id.* at 33-34); and (f) Linton stole a Pepco camera and let plaintiff be blamed for its loss. (*Id.* at 32-33.)

7) Plaintiff was not recognized at a meeting on March 20, 2008, as one of the employees who did not use any sick leave during 2007, even though he had not used any sick leave in over fourteen years, as of the time he filed his complaint. (*Id.* at 34.)

8) On September 23, 2009, plaintiff took two bottles of Gatorade from the Pepco supply area as he prepared to leave for an assignment in the field. He intended one bottle for himself and one for a coworker, following "normal procedure." (*Id.* at 1-2.) Rebecca Erlich, a Pepco engineer, then stopped him and told him that because the temperature would not reach eighty-five degrees that day she would return the bottle of Gatorade to the supply room. (*Id.* at 1-2.) "Rebecca Erlich seemed to have gone out of her way to irritate, anger, [and] belittle" him. (*Id.* at 2.) The observed high temperature on that date was eighty-seven degrees. (*Id.* at 2-3, 4, 5.)

## ANALYSIS

I. **INSUFFICIENT SERVICE OF PROCESS**

Defendant contends that the complaint should be dismissed for insufficient service of process pursuant to Federal Rule of Civil Procedure 12(b)(5). "Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Capital Int'l, Ltd. v. Rudolph Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987). "If the plaintiff does not properly effect service on a defendant, then the defendant may move to dismiss the complaint" under Rule 12(b)(5). *Hiska v. Jones*, 217 F.R.D. 16, 20 (D.D.C. 2003). Upon such a motion, " '[t]he party on whose behalf service is made has the burden of establishing its validity when challenged; to do so, he must demonstrate that the procedure employed satisfied the requirements of the relevant portions of Rule 4 and any other applicable provision of law.' " *Light v. Wolf*, 816 F.2d 746, 751 (D.C. Cir. 1987) (quoting 4 C. Wright & A. Miller, Federal Practice and Procedure § 1083 at 334 (1969)); *accord Cruz-Packer v. Dist. of Columbia,* 539 F. Supp. 2d 181, 186 (D.D.C. 2008). "Pro se litigants are allowed more latitude than litigants represented by counsel to correct defects in service of process and

3

pleadings," *Moore v. Agency for Int'l Dev.,* 994 F.2d 874, 876 (D.C. Cir. 1993), but "this consideration does not constitute a license for a plaintiff filing *pro se* to ignore the Federal Rules of Civil Procedure," *Jarrell v. Tisch,* 656 F. Supp. 237, 239 (D.D.C. 1987).

Plaintiff should have delivered the complaint to a Pepco officer or agent authorized by appointment or law to receive service of process, or mailed the complaint by registered or certified mail. *See* Fed. R. Civ. P. 4(h)(1); Fed. R. Civ. P. 4(e)(1); D.C. Super. Ct. Civ. R. 4(e), 4(h), 4(c)(3). Instead, plaintiff used USPS Express Mail. The Court, however, will decline to grant the motion to dismiss for insufficient service of process because plaintiff is acting *pro se*. *See Hester v. Dickerson*, 576 F. Supp. 2d 60, 64 n.4 (D.D.C. 2008) (denying a motion dismiss for insufficient service of process where any defect could have been cured and plaintiff was proceeding *pro se*).

## II. FAILURE TO STATE A CLAIM

Defendant also argues that plaintiff's complaint should be dismissed for failure to state a claim pursuant to Rule 12(b)(6). A court may dismiss a complaint if it fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A court "must accept as true all of the factual allegations contained in the complaint" when making a ruling on a motion to dismiss. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). However, a complaint will not survive under Rule 12(b)(6) if it consists only of "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 129 S.Ct. at 1940. "The [C]ourt need not accept inferences drawn by plaintiff[] if such inferences are unsupported by the facts set out in the complaint." *Kowal v.*

*MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994); *see also Twombly*, 550 U.S. at 555 (a court is "not bound to accept as true a legal conclusion couched as a factual allegation"). Although "[a] pro se complaint . . . 'must be held to less stringent standards than formal pleadings by lawyers,'" *Atherton v. D.C. Office of the Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009) (quoting *Erickson*, 551 U.S. at 94 (2007)), "a *pro se* complainant must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'" *Atherton*, 567 F.3d at 681-82 (quoting *Iqbal*, 129 S.Ct. at 1950).

### A. Title VII Claims

Plaintiff's complaint fails to allege sufficient facts to establish a claim for discrimination, harassment, or retaliation under Title VII.[1]

#### 1. Discrimination

Plaintiff has not stated a claim for discrimination. The elements required to establish a discrimination claim are (1) membership in a protected class, (2) adverse employment action, and (3) the inference of discrimination from that adverse employment action. *Bryant v. Brownlee*, 265 F. Supp. 2d 52, 58 (D.D.C. 2003). His complaint fails to allege an adverse employment action, nor is there any basis upon which to infer discrimination.[2]

"An 'adverse employment action' is a 'significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a

---

[1] Defendant also argues that since plaintiff failed to oppose defendant's motion in a timely manner and failed to address the arguments in the motion, defendant's motion should be treated as conceded. *See* LCvR 7(b); *U.S. v. Real Property Identified as: Parcel 03179-005R*, 287 F. Supp. 2d 45, 61 (D.D.C. 2003). As pro se complaints are held "to less stringent standards than formal pleadings drafted by lawyers." *Greenhill v. Spellings*, 482 F.3d 569, 572 (D.C. Cir. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)), the Court declines to dismiss the claims on these grounds.

[2] Defendant also correctly asserts that plaintiff never claimed membership in a protected class in the complaint. However, defendant's Exhibit A indicates that plaintiff is black and was 58 years old as of April 23, 2008. (Mot. at 8, n.5.)

decision causing significant change in benefits.'" *Douglas v. Donovan*, 559 F.3d 549, 552 (D.C. Cir. 2009) (quoting *Taylor v. Small*, 350 F.3d 1286, 1293 (D.C. Cir. 2003)). To establish an adverse action in the absence of diminution of pay or benefits, "[a]n employee must 'experience[ ] materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm.'" *Douglas*, 559 F.3d at 552 (quoting *Forkkio v. Powell*, 306 F.3d 1127, 1131 (D.D.C. 2002)); *see also Stewart v. Evans*, 275 F.3d 1126, 1134 (D.C. Cir. 2002).

Plaintiff has not claimed a diminution in pay or benefits. Plaintiff received a formal written reminder after he removed the key from the ignition of a company vehicle while stopped at a traffic signal. (Compl. at 10.) Plaintiff also alleges that various Pepco employees spoke rudely to him and criticized his performance. These criticisms do not amount to adverse employment actions. *See Taylor*, 350 F.3d at 1293 (formal criticism should not be considered adverse employment actions unless they affect grade or salary); *Bryant v. Brownlee*, 265 F. Supp. 2d at 62 (nitpicking criticism not an adverse employment action because there was not tangible change in employment conditions).

Pepco's failure to select plaintiff for storm duty and assignment to Prince George's County during the street light conversion project also do rise to the level of an adverse employment action, because plaintiff does not allege any material effect on the conditions of his employment. *See Nichols v. Truscott*, 424 F. Supp. 2d 124, 137 (D.D.C. 2006) (no adverse employment action when employee was assigned to less desirable work within her job description). "Purely subjective injuries, such as dissatisfaction with a reassignment, or public humiliation or loss of reputation, are not adverse actions." *Forkkio v. Powell*, 306 F.3d 1127, 1130-31 (D.C. Cir. 2002) (citations omitted).

Plaintiff did receive a three-day suspension with pay, which could meet the standard for an adverse employment action. *See Faul v. Potter*, 355 Fed. Appx. 527 (2d Cir. 2009) (holding that issue of whether a suspension with pay was an adverse employment action not appropriate for summary judgment). However, plaintiff never alleges that discrimination was the basis of the suspension, nor does he provide any facts upon which one could infer discrimination. A plaintiff cannot establish a prima facie case of discrimination without the inference of discrimination from an adverse employment action. *Bryant*, 265 F. Supp. 2d at 58.

### 2. Hostile Work Environment

The complaint also fails to state a claim for hostile work environment. The elements of a prima facie hostile work environment claim are (1) plaintiff's membership in a protected class, (2) that plaintiff was subject to unwelcome harassment, (3) that the harassment occurred because of plaintiff's protected status, (4) that the harassment affected a term, condition, or privilege of employment, and (5) that the employer knew or should have known of the harassment, and failed to act to prevent it. *Hunter v. District of Columbia Child and Family Services Agency*, No. 09-1491, 2010 WL 1857142, at *3 (D.D.C. May 11, 2010). "Courts in this jurisdiction have routinely held that hostile behavior, no matter how unjustified or egregious, cannot support a claim of hostile work environment unless there exists some linkage between the hostile behavior and the plaintiff's membership in a protected class." *Na'im v. Clinton*, 626 F. Supp. 2d 63, 73 (D.D.C. 2009). To survive a motion to dismiss, the harassment must be "sufficiently extreme . . . so that Title VII does not evolve into a 'general civility code'." *Hunter*, 2010 WL 1857142, at *4 (quoting *Faragher v. Boca Raton,* 524 U.S. 775, 788 (1998)).

Plaintiff fails to connect the majority of his unpleasant experiences (i.e., the humiliation of being spoken to rudely, the deletion of his work files, the insubordination of Travis White, the

7

blame he took for the lost camera, or the accusations of stalking) with his protected status. Therefore, any claim based on these events must be dismissed. *See Roberson v. Snow*, 404 F. Supp. 2d. 79, 96-97 (D.D.C. 2005) (granting summary judgment for defendant when plaintiff presented no evidence connecting harassment to his protected status).

Travis White's questioning of plaintiff about retirement plans could arguably be connected to plaintiff's age, but one comment cannot, as a matter of law, amount to a hostile work environment. *Stewart v. Evans*, 275 F.3d 1126, 1134 (D.C. Cir. 2002) ("Except in extreme circumstances, courts have refused to hold that one incident is so severe to constitute a hostile work environment."); *see also Hunter*, 2010 WL 1857142, at *5 (dismissing hostile work environment claim for failure to state a claim because harassment was not sufficiently severe when plaintiff alleged his work was disparaged and coworkers falsely accused him of being threatening and hostile).

### 3. Retaliation

Plaintiff also cannot make a Title VII claim of retaliation as he does not allege that he engaged in any statutorily protected behavior. *See Roberson v. Snow*, 404 F. Supp. 2d 79, 92 (D.D.C. 2005).[3]

### B. Breach of Contract Claim

Plaintiff also asserts breach of contract by Pepco in "not abiding by, adhering to the agreement made between Pepco and Local Union #1900 of The International Brotherhood of Electrical Workers" when Pepco failed to select plaintiff for overtime work after Hurricane

---

[3] Defendant also argues that many of plaintiff's claims are time barred and many should be dismissed because plaintiff did not exhaust his administrative remedies. (Mot. at 13-15.) These arguments will not be addressed because the Court is dismissing the complaint for failure to state a claim.

Katrina and on the streetlight conversion project. (Opp'n at 2-4.) This claim must also be dismissed.[4]

A claim that arises from and requires interpretation of a collective bargaining agreement ("CBA") is preempted by Section 301(a) of the Labor Management Relations Act and must be dismissed for failure to state a claim. *Bush v. Clark Constr. & Concrete*, 267 F. Supp. 2d 43, 46 (D.D.C. 2003). Plaintiff's claim arises solely from and would require the Court to construe the collective bargaining agreement and therefore must be dismissed.

Moreover, a plaintiff must exhaust the grievance and arbitration procedures provided for in a CBA before bringing suit for breach of contract. *Marcelus v. Corrections Corp. of America/Correctional Treatment Facility*, 540 F. Supp. 2d 231, 236 (D.D.C. 2008). The CBA in this case provides for final and binding arbitration. (Def.'s Reply, Ex. 1, at 45-46.) Therefore, plaintiff cannot bring a claim for breach of contract against an employer unless he can show that the union breached its duty of fair representation in handling a grievance. *See Noble v. U.S. Postal Service*, 537 F. Supp. 2d 210, 216 (D.D.C. 2008). Since plaintiff asserts no such breach of duty by the union, this claim must be dismissed for this reason as well.

---

[4] Defendant also argues that this claim should not be considered because plaintiff did not reference the agreement or breach thereof in the original complaint. (Def.'s Reply at 4-5.) A plaintiff may not amend his complaint by the briefs in opposition to a motion to dismiss. *See, e.g.*, *Calvetti v. Antcliff*, 346 F. Supp. 2d 92, 107 (D.D.C. 2004) (quoting cases); *see also Coll. Sports Council v. GAO*, 421 F. Supp. 2d 59, 71 n.16 (D.D.C. 2006) ("[T]he Court does not, and cannot, consider claims first raised in the plaintiff's opposition."). However, since plaintiff appears before this Court *pro se*, and "complaints filed by *pro se* litigants are held to less stringent standards than formal pleadings drafted by lawyers," *Rogler*, 620 F. Supp. 2d 123, 127 (D.D.C. 2009), and plaintiff did include facts related to this claim in the original complaint, the Court will not dismiss the breach of contract claim on these grounds.

## CONCLUSION

For the reasons set forth above, the Court will **GRANT** defendant's motion to dismiss for failure to state a claim upon which relief can be granted. A separate Order accompanies this Memorandum Opinion.

/s/
ELLEN SEGAL HUVELLE
United States District Judge

DATE: July 7, 2010